IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILINOIS, EASTERN DIVISION

**FILED** JG
7/17/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **RACHEL M. HUBBARD** | ) | |
| | ) | |
| **Plaintiff pro se** | ) | **Case No.: 1:20-cv-06680** |
| | ) | |
| **v.** | ) | **Judge Edmond E. Chang** |
| | ) | |
| **GASPEREC ELBERTS** | ) | **Magistrate Judge Susan E, Cox** |
| **CONSULTING, LLC** | ) | |
| | ) | |
| **Defendant** | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO
## FILE MOTION TO AMEND COMPLAINT AND ADD PARTIES

Pursuant to Rules 16 and 15 of the Federal Rules of Civil Procedure ("FRcP"), Plaintiff pro se,

Rachel M. Hubbard ("Plaintiff" or "Plaintiff pro se"), hereby seeks Leave of the Court to file her

Motion to Amend Complaint so that she may provide new information, pertinent facts, and to

add Christopher B. Burke Engineering LTD; Christopher B. Burke; Mackie Consultants LLC;

Martin T. Burke; Trudy K. Buehler; Megan B. Elberts; and Lisa M. Gasperec as Defendants

("Proposed Defendants"). Plaintiff's proposed First Amended Complaint is attached as Exhibit A

    FRcP Rule 16(b)(4) dictates that to amend a scheduling order "good cause" must be

shown and it must be "with the judge's consent." Rule 16(b)'s good cause standard mainly

considers "the diligence of the party seeking amendment.'" If the party then meets the good cause

requirement in Rule 16, the party must demonstrate that the amendment was proper under Rule

15. FRcP.

    FRcP Rule 15(a) of the Federal Rules of Civil Procedure conveys a liberal approach to

amendments, stating that leave to amend "shall be freely given when justice so requires."

Daugherity v. Traylor Bros., Inc., 970 F. 2d 348, 351 (7th Cir. 1992). Generally, the decision whether to grant a party leave to amend the pleadings is a mater left to the discretion of the district court. Orix Credit Alliance v. Taylor Mach. Works, 125 F. 3d 468, 480 (7th Cir. 1997).

FRcP Rule 15 provides that leave to amend shall be freely given "when justice so requires." FRcP Rule 15(a)(2). Courts view motions to amend filed before the deadline set out in the scheduling order with a "liberal policy favoring amendments." Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 395 (8th Cir. 2016) (citing In re Graphics Processing Units Antitrust Litig., 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007))

Plaintiff has conferred with Defendant's attorneys pursuant to Local Rule 37.2 via telephone on July 8, 2021. Plaintiff provided Defendant case law Defendant's attorneys have provided their objections. Plaintiff revised her amended Complaint and provided it to Defendant's attorneys on July 16, 2021. Plaintiff's Motion to Amend her Complaint and to Add Parties is not brought in bad faith, and is not interpreted for an improper purpose, for harassment or delay in proceedings; and, therefore, an expedited ruling is requested to ensure the prompt administration of justice, without unnecessary delay to any party. This motion is supported by the following facts, legal arguments, and case law, as well as the entire record in this proceeding.

## **PROPOSED DEFENDANTS**

Plaintiff's original Complaint was filed on November 10, 2021. Through the Amended Complaint, Plaintiff seeks to add Christopher B. Burke Engineering, LTD; Christopher B. Burke, CEO and Founder of Christopher B. Burke Engineering, LTD; Mackie Consultants, LLC; Martin T. Burke, President of Mackie Consultants, LLC ("Mackie"); Trudy Buehler, member owner of Mackie; Megan B. Elberts and Lisa Gasperec, owners of current Defendant, Gasperec Elberts Consulting, LLC.

Plaintiff alleges that collectively these companies acted as a single enterprise in that CBBEL, Mackie and GEC were member companies of TBG, and along with their owners and employees were involved in GEC's formation, daily operations, and in Plaintiff's employment. Through deposition testimony and production of documents, Plaintiff received additional facts and information regarding Defendants' collective scheme to share company resources, employees, and assets to form a successful certified disadvantaged company, the corporate and individual entities operating the scheme, and the extent of these entities' interrelatedness and cooperation towards a common goal. The following non-exhaustive list of facts and information, coupled with Plaintiffs' allegations in the original Complaint, form the factual basis for Plaintiffs' Amended Complaint:

## **COMMON ENTERPRISE**

1)      Gasperec Elberts Consulting LLC ("GEC") is an Illinois limited liability company located in Illinois. GEC is owned in part by Megan B. Elberts and Lisa Gasperec. GEC initiated its application for Women-owned Business and Minority-owned Business Enterprise certifications on or about April 18, 2017.

2)      On or about September 12, 2017, GEC received its WBE\DBE certifications through the City of Chicago's Department of Procurement.

3)      On or about August 7, 2017, Plaintiff interviewed with CAD Mackie's Manager, Michael Dawson via phone for a CAD Technician position.

4)      On or about August 16, 2017, Plaintiff met with Martin Burke, President of Mackie, Megan Elberts, manager of GEC, and Russell Olsen, a Professional Land Surveyor, for a position as a Computer Aided Designer ("CAD") Technician at GEC's office located at 9501 W. Devon Avenue, Suite 702, Rosemont, Illinois. During the interview Plaintiff learned they were seeking WBE certification.

5)      Immediately after the interview, Megan Elberts and Martin Burke called Plaintiff and extended an offer of $25.00 per hour.

6)	On August 17, 2017, Plaintiff received an offer letter from Megan Elberts. Plaintiff accepted the offer.

7)	On August 28, 2017, Plaintiff began working as a CAD Technician at GEC offices.

8)	According to GEC new employee paperwork and invoices for clients, Plaintiff was billed as a "CAD Technician II" rate. The paperwork also identified Mike Dawson as the CAD Manager. During Plaintiff's employment, she was never told what a CAD Technician II was.

9)	Deposition testimony and Plaintiff's production of documents show that at the start of her employment, every employee and manager at GEC, including Megan Elberts and Lisa Gasperec was previously employed by CBBEL, Mackie, or Spaceco, another member company of TBG. Documents show that Plaintiff interviewed with Mackie and GEC for her position at GEC. Plaintiff alleges Mackie and GEC provided her $25 per hour after her interview. Plaintiff testified during her deposition that she believed they were one company.

10)	Plaintiff has produced documents that show her 401(k), life and health benefits identified TBG as her employer and is sponsored by CBBEL. Documents show that her computer, Computer Aided Design ("CAD") software, accounting and timekeeping software, company manuals, human resources at GEC were provided by Mackie and CBBEL who also

managed her email and employee records. CBBEL, Mackie, GEC and TBG also shared human resource personnel. GEC and CBBEL also share liability insurance.

11)     Plaintiff has produced documents that show Martin Burke provided GEC's vehicles and survey equipment through Mackie and Lynn Consulting, another GEC affiliate. Martin Burke also approved pricing for GEC's projects, directed their efforts, and approved overtime. Martin Burke also initiated contact with a client for a site located in McCook, Illinois for the Metropolitan Athletic Exposition. The work was passed on to GEC and Plaintiff performed some of CAD work along with other GEC employees during her employment with GEC. In or about October 2019 she learned from public sources that the site, along with Mackie and Martin Burke, were the subject of a federal search warrant which was previously under seal in the Northern District of Illinois (19M656). The search warrant was issued on or about September 19, 2019.

12)     Plaintiff has produced documents that show Martin Burke and Megan Elberts shared common ownership in Lynn Consulting LLC ("Lynn") which Mr. Burke and Ms. Elberts used for cash distributions and to transfer company vehicles and survey equipment to and from GEC. Lynn was also a member company of TBG.

13)     Plaintiff has produced documents that show Martin Burke actively sought to purchase a certified disadvantaged surveying company and formed Macias Consulting LLC ("Macias LLC") along with Christopher Burke and Megan Elberts.

14)     By agreement among Defendants, Martin Burke, Christopher Burke, and Megan Elberts purchased Macias & Associates LP, ("Macias LP") a Texas company which was certified as a Minority owned Business Enterprise ("MBE") by the Unified Texas Unified Certification Program ("TUCP"). The documents show that the purchase was facilitated by Carl Yudell who received the summons in the current case on behalf of GEC. Mr. Yudell is also the agent of record for Mackie as well as several companies owned by Christopher Burke.

15)     By agreement among Defendants, Macias LLC added Trudy Buehler along with other owners of Mackie as shareholders of Macias Consulting LLC. At the time of the purchase, the company remained certified and none of the current or previous owners reported the transfer of ownership to the TUCP. They also did not apply for certification lawfully at the time, as was required by the certifying agency.

16)     Michael Dawson is the CAD manager at Mackie. On June 24, 2021, Michael Dawson testified during his deposition that Martin Burke directed him to interview Plaintiff for a CAD Technician position. When asked, "What was the goal? Was the goal for me to interview with you and deal with Martin, or with someone else?" "I don't know what the goal was. I was unaware of us hiring at the time when I interviewed you." When asked, he acknowledged that he installed GEC's computers when they started their business, setup email, installed software, drafted the CAD manuals along with other Mackie employees, and maintained VPN connections to the computers for Mackie, CBBEL, GEC and GEC's affiliate, SGE, a Texas company. He also testified that TBG is a bunch of companies in the same building, but he did not know who owned what. Plaintiff received the transcript of Michael Dawson's deposition on July 9, 2021.

17)     Megan Elberts is an owner of GEC. On May 12, and on May 18, 2021, the deposition of Megan Elberts was held. Megan Elberts testified that GEC was a new company and did not have any company policies or hiring procedures in place. When asked how she accessed Plaintiff's resume, she admitted for the first time that Martin Burke passed on Plaintiff's resume to her. She admitted that she interviewed Plaintiff along with Martin Burke, and Russell Olsen for a CAD Technician position with GEC. Plaintiff has alleged Martin Burke and Ms. Elberts determined her pay after her interview during a phone call. When asked if she and Martin Burke ever use Lynn Consulting to transfer assets between companies, she testified no. However, Plaintiff has produced documents that vehicles and equipment was transferred between Mackie, Lynn, and GEC. She also admitted that Christopher Burke was her father and that he owned CBBEL. She also admitted that Martin Burke was her cousin and that she *believed* he owned Mackie Consultants. However, she claimed not to know the intricacies and corporate structure of the companies. She acknowledged that she had purchased the minority owned firm, Macias LP along with, Martin Burke and Christopher Burke, but claimed it was sold back to the original owners Ms. Elberts also admitted that she worked at CBBEL prior to owning GEC. Ms. Elbert's acknowledged that she previously held ownership in SGE but claimed her ownership ended in 2016. However, Plaintiff has produced documents that show MS. Elberts signed the articles of dissolution in 2018. When asked about Martin Burke's involvement in GEC, Ms. Elbert's claimed he was *mentoring* her. She also claimed for the first time that TBG was a benefit sharing program which she paid for. She testified the last payments were made in December 2020. On June 2, 2021, Plaintiff provided GEC's attorneys Plaintiff's Second Request for Production of Documents which sought information about the "benefit sharing program" and GEC's liability insurance. In response, GEC failed to produce any information about the benefit sharing program

claiming Plaintiff's request was burdensome, and not relevant to Plaintiff's claims. However, GEC provided an expired insurance policy which expired in 2018 that showed GEC was covered under CBBEL's insurance policy. Plaintiff received the transcript of Megan Elbert's deposition on June 25, 2021.

18)     Martin Burke's deposition was held on June 24, 2021. Documents that show Martin Burke is the President of Mackie Consultants LLC and shared common ownership with Christopher Burke and Trudy Buehler. Documents show that he directed Michael Dawson to interview Plaintiff. Documents show that Plaintiff interviewed with Martin Burke, Megan Elberts and Russell Olsen. Plaintiff alleges that Martin Burke and Megan Elberts provided the offer to work at GEC immediately after her second interview. Documents show that Martin Burke approved overtime for GEC employees, and set pricing for GEC's proposals. Documents show that he and Megan Elberts shared common ownership in Lynn which was used to share company assets between Martin Burke and Megan Elberts for GEC. Documents also show that he, along with Megan and Christopher Burke, formed Macias LLC to purchase the minority owned firm, Macias LP which was certified in Texas. Documents show that Plaintiff worked on the MAX project at GEC as described in Paragraph 5 above. When Plaintiff questioned him during his deposition Martin Burke testified he could not recall. Plaintiff received the transcript of Martin Burke's deposition on July 11, 2021.

19)     Lisa Gasperec is also an owner of GEC. On June 10, 2021, she testified during her deposition that she was previously a Vice President of CBBEL. She also testified that she was previously an owner of SGE, a Texas company that was dissolved in 2018. Documents show

there were (2) SGE companies that shared the same mailing address as GEC. Plaintiff has also produced documents that show she along with other GEC employees performed work for SGE. Ms. Gasperec also testified that she met with Christopher Burke and was asked to consider starting GEC with Megan Elberts. Plaintiff's production of documents shows that Ms. Gasperec met with Martin Burke about forming GEC as well. Plaintiff received the transcript of Lisa Gasperec's deposition on June 29, 2021.

20) Trudy Buehler is a member owner of Mackie. On June 24, 2021, Trudy Buehler's deposition was held. She testified that she worked at GEC with Plaintiff as GEC's Civil Engineering Design Lead from approximately November 2017 through March 2019. When Plaintiff asked Ms. Buehler if she continued to do work for Mackie while being employed at GEC, she testified that she *assisted them*. However, Plaintiff has produced documents that show she did more than assist Mackie during her employment at GEC. Documents and photos show that she kept Mackie's vehicle and used it while employed at GEC; she kept her TBG ID\lanyard and maintained access to TBG's building; she continued to use her Mackie email account for Mackie's projects while at GEC; and she continued to be an owner of Mackie and owned part of TBG's building where CBBEL and Mackie are headquartered, during her employment at GEC. When Plaintiff asked her if she received any pay from Mackie while she was employed at GEC, she eventually admitted that she continued to receive pay as an owner in the form of quarterly dividends, based on their (Mackie) performance. When Plaintiff asked if she used the Mackie vehicle for work purposes at GEC, Ms. Buehler testified, yes. Plaintiff has produced the vehicle registration information showing Mackie as the owner. Plaintiff also produced a traffic accident report that shows Ms. Buehler used the vehicle during the 2018 Christmas break in Ohio. When

asked, Ms. Buehler also admitted she used the vehicle for personal use as well. She also acknowledged that she gave Plaintiff her TBG ID\lanyard to use the bathroom in the TBG offices during a summer event that place at the TBG offices. During her testimony Plaintiff showed Trudy Buehler pictures of the vehicle and the ID\lanyard and she identified both. Ms. Buehler also testified that she believed Megan Elberts mentioned to her that GEC had received a FOIA but claimed not to be able to recall any specifics. Plaintiff received the transcript of Trudy Buehler's deposition on July 7, 2021.

21)     Russell Olsen was Plaintiff's supervisor at GEC. During his deposition on July 13, 2021, he admitted that he also was employed by Mackie prior to GEC. He initially testified that he did not believe Martin Burke was present during Plaintiff's interview. However, when Plaintiff produced documents showing Martin Burke was present for her interview, he acquiesced. When asked whether Michael Dawson and other Mackie employees performed work for GEC he testified yes, because GEC was swamped. Plaintiff has produced documents that show GEC, Mackie, CBBEL and TBG performed work for GEC. When asked about the other employees who were listed on GEC's work schedule, he claimed he could not recall. Plaintiff received the transcript of Russell Olsen's deposition on XXX, 2021.

22)     In or around July 2018, after long suspecting that the Defendants were engaged in WBE\DBE fraud, she enlisted the assistance of an attorney.

23)     According to the City of Chicago's Rules and regulations regarding women and minority-owned certifications, certified firms are forbidden from sharing management,

employees, office space, resources, or equipment, and must operate independently. As part of the certification process, applicants are required to provide material facts regarding any ownership and any attempts by the applicant firm or its associates, to obtain certification through any other government agency. The applicant firm is required to affirm the contents of their application are true. Certified firms have an ongoing affirmative duty to inform the certifying agency of any material change in the firm.

24) In or around August 2018, a FOIA request was submitted to the City of Chicago's Office of Procurement which sought information about GEC's application for certification as a WBE\DBE firm. Plaintiff also began reaching out to state and federal authorities to report the suspected fraud.

25) On September 28, 2018, Plaintiff received GEC's certification application and identified several false statements that Megan Elberts and Lisa Gasperec swore to be true and accurate under penalty of perjury by way of signed affidavits. In response to the agency's questions regarding the involvement of Mackie, Megan Elberts provided the following statement, "Mackie does not provide a any service to GEC. The relationship of Mackie and GEC is a business relationship. GEC does not share space, employees, equipment, or any other resource with Mackie. GEC does not have any common ownership or common ownership with Mackie. GEC does not have any leasing relationships with Mackie. There have been times when GEC and Mackie worked for the same client. Any time that has happened, the work has

been done entirely by each company's respective employees, and work done by GEC was completed at my sole direction."

26)     According to Defendant's application for certification, Section II Certification History, Defendant GEC through its representative, Megan Elberts was asked the following, "Describe the Applicant firms' certification history with other government entities (federal, state, local), including certification attempts made by other firms associated with owners, officers, directors or senior management of the current Applicant firm. In response, Megan Elberts stated, "No previous applications." However, Ms. Elberts failed to notify the City of Chicago that she, Martin Burke, and Christopher Burke did in fact make a successful attempt to purchase Macias LP, a minority owned company certified by TUCP. Plaintiff submits this was a material fact that they withheld.

27)     According to GEC's application for certification, GEC and its representatives had an "ongoing affirmative duty to notify the City of any changes in ownership or control" of (GEC), "or any other fact affecting your firm's eligibility within 10 days of such change."

28)     Plaintiff's production of documents shows that after GEC responded to the FOIA request and provided the documents, Megan Elberts sent GEC employees including Plaintiff, an email invitation for a meeting involving GEC's WBE\DBE certifications on September 17, 2018.

29)     On September 25, 2018, GEC employees, including Plaintiff, met with Maura Downs, a representative from the law firm of Taft, Stettinius & Hollister, LLP ("Taft").

Plaintiff's documents show that Taft assisted GEC with its application for certification and is listed as its attorney. Plaintiff alleges that during the meeting Ms. Downs attempted to intimidate Plaintiff by standing over her and staring at her throughout the meeting. Plaintiff's documents show that Taft created a document which Ms. Downs which was shared with GEC employees and used during presentation. Relevant parts of the document reads, "WBE certification is for independent companies that are 51% owned and controlled by women. Certain government work and private sector work gives preferences to companies designed as WBE. These programs have been subjected to fraud and this has created an environment of high scrutiny for companies that are WBE certified. While some of GEC's employees have roots with related companies, those are other companies that have nothing to do with GEC. Do not imply that GEC is a shoe-in for any job because of your relationships with the bidding firm. Don't make any comment that you wouldn't be comfortable with Megan or Lisa hearing you say. Don't imply that you are acting on behalf of someone you're not."

30) After the meeting Plaintiff alleges that Ms. Downs ask her if she knew Ms. Jackson. Plaintiff responded she did not. Only after the meeting did Plaintiff determine that Ms. Jackson was the person who submitted the FOIA. According to the City of Chicago's public records regarding FOIA requests, Ms. Jackson represented the law firm that Plaintiff had contacted regarding the suspected fraud. After the meeting Plaintiff was fearful and believed she would be fired and retaliated against. Plaintiff submits these events occurred before she raised her unequal pay claim. Plaintiff alleges these events served as a precursor and additional motive for the subsequent retaliation which Plaintiff alleged in her original Complaint.

31)     Plaintiff submits to this Court, these events served as a precursor to the discriminatory actions described in Plaintiff's original Complaint. Plaintiff alleges Defendants had a retaliatory motive for the discrimination actions it took after Plaintiff raised her claims.

## PLAINTIFF'S LEGAL ARGUMENT AND CASE LAW
## IN SUPPORT OF ADDING DEFENDANT'S
## MARTIN BURKE, MEGAN ELBERTS,
## LISA GASPEREC, AND TRUDY BUEHLER

As descried herein, Proposed Defendants Mackie Consultants LLC, Christopher Burke Engineering LTD, The Burke Group LTD, Martin Burke, Christopher Burke, Megan Elberts, Lisa Gasperec, and Trudy Buehler, did not honor corporate formalities because they shared the control, shared employees, and company assets. By agreement, Defendants participated in a scheme to obtain ownership of a minority owned surveying firm which was certified by the State of Texas. Ms. Elberts provided false information to the City of Chicago's Department of Procurement and omitted material facts that she and Lisa Gasperec had an ongoing duty to provide to the certifying agency regarding Mackie consultants. Ms. Elberts and Lisa Gasperec signed affidavits and swore to the accuracy of GEC's application for WBE\DBE certifications which they knew to be untrue. Plaintiff further alleges Megan Elberts and Lisa Gasperec

suspected that Plaintiff caused a FOIA to be issued regarding GEC's certification application. Plaintiff has produced the FOIA as well as evidence of the meeting that took place at GEC's Rosemont offices with GEC's attorney, Maura Downs. Plaintiff argues the comingling and sharing of company assets, benefits and employees is related to Title VII. Plaintiff is not arguing to add any additional counts to the existing Complaint. However, Plaintiff argues that GEC was not an independently operated company and that these Defendants should be considered her employer. She also seeks to add these pertinent facts to the current Complaint.

Plaintiff submits that piercing the corporate veil is a legal concept that applies to corporations and to LLCs in Illinois. Specifically, it imposes personal liability against owners, members, and managers of LLCs. For corporations, it applies to directors, officers, and shareholders for the corporation's debts if certain criteria are met. While personal assets are often protected, that premise is only true if appropriate corporate formalities are strictly followed.

According to Illinois law, two principal requirements must be met in order to pierce the corporate veil. 1) There must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. 2) Circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences.

In the case of *Papa v. Katy Industries, Inc.,* the 7th Circuit provided discussed the grounds upon which the court can "pierce the corporate veil" and thereby disregard the separate LLCs and treat them all as one entity. It noted one such situation is to allow a creditor of a subsidiary to sue a parent or other affiliate, when because of neglect of corporate formalities or a holding out of the parent as the real party with whom a creditor of a subsidiary is dealing, the

parent (or other affiliate) should be held liable for the torts (wrongful acts) or breaches of contract by the subsidiary. However, the 7th Circuit noted that the integration of operations was not enough to justify piercing of the veil because firms too tiny to achieve the realizable economies of scale in their industry would go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership.

In the current case, Plaintiff does not argue integration alone. Plaintiff argues that when the Defendant employer is a certified minority-owned firm and that integration, in the form described herein, is not allowed. Plaintiff argues any analysis as to whether this case justifies the piercing of the corporate veil to Mackie, CBBEL and or TBG, must consider the rules of the certifying agency which GEC and its owners had an affirmative on-going duty to abide by. If GEC, integrated with other businesses that it claimed did not provide a service on its application for certification, the argument is in direct conflict with the goals of the certifying agency. Facts show that Megan Elberts and Lisa Gasperec swore by way of affidavit to the City of Chicago, and during her deposition testimony, that Mackie did not provide a service to GEC. Megan Elberts, Martin Burke and Trudy Buehler testified that Martin Burke was mentoring them. However, the facts provided herein, shows that he did much more than that. In addition, the purchase of Macias LP by Megan Elberts, Christopher Burke, and Martin Burke, was a material fact that Megan Elberts and Lisa Gasperec had an ongoing affirmative duty to disclose to the City of Chicago and failed to do so. In fact, GEC's application shows that Megan Elberts and Lisa Gasperec perjured themselves. The evidence in the current case also shows that Trudy Buehler continued to be an owner of Mackie and supervised Plaintiff while both worked for

GEC. These are material facts that should not be ignored and should be considered in the analysis of Title VII.

In the case of Angell v. Santefort Family Holdings LLC, Plaintiff Angell sued the wrong company. After the circuit court granted summary judgment for the defendant on that basis, the appellate court reversed. The appellate court held that the corporate veil between the defendant company and a sister company in the same family real estate business could be pierced to hold the sister liable for Angell's injury even though it was not named in the suit. (2020 IL App (3d) 180724, ¶21.) In that case, Brian Gallagher was the COO and CFO of defendant Santefort Family Holdings, LLC (LLC). During his deposition, he testified that the Santefort Family 2012 Irrevocable Trust owned a subsidiary, which in turn owned and operated the LLC. He further testified that there were at least 11 companies related to the Trust's real estate business, including single-purpose entities that owned each real property asset, as well as a management entity and a payroll entity providing services to them. the circuit court granted the LLC's motion and denied Angell's motion to amend her complaint. Angell appealed. As a result of Angell's appeal, the appellate court reversed the district court's findings, holding that it was possible that the facts warranted piercing of the veil between the LLC and Trust's real estate business, Midwest Home Rentals, LLC.

In the current case, Plaintiff argues the actions of the proposed Defendants, the deposition testimony, the documentary evidence, and the facts detailed herein, warrant piercing of the veil of GEC to CBBEL, Mackie and TBG. Plaintiff argues she has raised genuine issues of material fact that the corporate veil should be pierced, and thus, this Court should grant her motion to add these new Defendants. Not only did these Defendants ignore

corporate formalities, but they also shared employees, HR departments, software, and company assets; transferred employees and company assets to GEC for its operations; and maintained the same company policies, and accounting measures. Even if the Court were to determine that CBBEL had a contractual relationship with GEC, Ms. Elberts testified that when GEC participated in the shared benefits plan, they paid for their services and have not done so since December 2020. TBG, still provides benefits to Plaintiff and CBBEL continues to sponsor the benefits of Plaintiff's 401(k) plan. Plaintiff argues that GEC is not identified anywhere on Plaintiff's current 401 (k) plan. Plaintiff argues TBG's primary purpose was to facilitate the operations of each of its member companies, including CBBEL, Mackie, GEC, and its affiliates. Plaintiff submits circumstances exist in the current case show that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. (In re Estate of Wallen, 262 Ill. App. 3d 61, 68–69, 633 N.E.2d 1350, 1357 (1994) Illinois courts have held that the failure to follow corporate formalities, even a non-shareholder, who is not an officer, director, or employee of a corporation, may be found individually liable for a judgment against a corporation where the non-shareholder exercises only equitable ownership and control over a corporation; the non-shareholder is liable even if there were no allegations that the non-shareholder engaged in any wrongdoing. (John Buckley and Mama Grimm's Bakery, Inc. v. Haithham Abuzir, 2014 IL App (1st) 130469 (April 10, 2014)) However, in the current case, Plaintiff has alleged wrongdoing which she argues is related to GEC and each of the proposed Defendants. Since filing her Charge with the EEOC Plaintiff has argued that GEC, Mackie, TBG, Christopher Burke, Martin Burke, and Megan Elberts acted as one company from the start of Plaintiff's employment.

# PLAINTIFF'S ARGUMENT IN SUPPORT OF
# AMENDING PLEADINGS AND ADDING DEFENDANTS
# AFTER THE DEADLINE

At the start of Plaintiff's employment, she completed applications that identified TBG as her employer. When Plaintiff submitted her statement to the EEOC she identified TBG, Christopher Burke, Martin Burke, and Mackie, but could not fully identify the exact names of the company. When Plaintiff filed her Complaint in the current case, she still did not know the names of the companies and the owners because each had LLC and LTD entities and maintained offices in Illinois, Texas, and numerous other states. When Plaintiff submitted her filed her Rule 26(a) Initial Disclosures, she listed Mackie Consulting LLC, Mackie Consultants LTD, Christopher Burke LLC, Christopher Burke LTD, and The Burke Group LTD. Plaintiff also listed GEC's affiliates, Lynn Consulting LLC, SGE Consulting LLC, SGE & Associates LLC. Plaintiff suspected but did not know if the ownership of any of these companies had changed or which companies were still in business. Plaintiff also did not know if The Burke Group was in fact the parent company. When the depositions of Megan Elberts took place on May 12, and on May 18, 2021, Ms. Elberts testified for the first time that Martin Burke was her cousin and she believed he owned Mackie Consultants, but he claimed not to know the intricacies of the ownership. She also admitted for the first time that Christopher Burke Engineering LTD was owned by her father. However, she testified that she believed The Burke Group did not have employees. She also testified that Trudy Buehler was one of Plaintiff's manager at GEC. However, because of technical difficulties, the video and portions of her testimony from May 12, 2021, was lost. The deposition was continued and completed on May 18, 2021. Because portions of her testimony had been lost, Plaintiff revisited the questions she asked from May 12, 2021, to

ensure it was captured. Plaintiff did not receive the transcript of Ms. Elberts deposition on June 25, 2021. On July 2, 2021, Defendant's attorneys provided Plaintiff documents of their liabilities insurance which showed that Christopher B. Burke Engineering, LTD was the insured. After Plaintiff received the insurance documents Defendant's attorneys confirmed they were covered by CBBEL's insurance policy. During the deposition of Martin Burke on June 24, 2021, he testified for the first time that he was the President of Mackie Consulting LLC. He also testified for the first time that Mackie Consultants LTD had been dissolved. Plaintiff received the transcript of his deposition until July 11, 2021. During the deposition of Trudy Buehler on June 24, 2021, Ms. Buehler surprisingly admitted that she was an owner of Mackie and performed work for both GEC and Mackie when she worked with Plaintiff at GEC.

Plaintiff's proposed Motion seeks to add these pertinent facts which were not known prior to the deadline for amending pleadings and adding parties, which was on May 3, 2021, which was entered by Judge Chang on December 11, 2020. (Dock. #14) Plaintiff acknowledges that the date was provided by the Parties. Plaintiff did not realize the date had passed until after the dispute arose regarding the subpoenas of non-party witnesses, which included, Martin Burke, Trudy Buehler, Michael Dawson, and Tina Moran. (Dock. #36) On June 11, 2021, Judge Chang referred the case to this Magistrate. On this same day, Plaintiff received the transcript of Megan Elberts. Since that date, Plaintiff has conducted the depositions of Martin Burke, Trudy Buehler, Michael Dawson, and Russell Olsen. Plaintiff believes she had an obligation to bring factual and relevant claims against properly named defendants and believed she could not submit information that was not investigated or confirmed by the witnesses during discovery. It has been extremely costly to Plaintiff and challenging to bring this case. Plaintiff has conducted (6) depositions in total of her supervisors, managers, and the relevant employers. Due to her

increasing obligations to this case and the Court, Plaintiff has been only able to work 2-3, and rarely, 4 days per week. Plaintiff acknowledges she has been overwhelmed in learning the Court's civil procedures, but she has never deliberately delayed, neglected, or ignored any of the Court's Orders and believed she could file her amended Complaint and add defendants prior to the closing of fact discovery. Plaintiff submits her failure to meet the Court's deadline was due to excusable neglect and was not an attempt to deliberately neglect the Court's Order. Since that date, the Parties have held the depositions of Michael Dawson, Trudy Buehler, Martin Burke, Plaintiff's former attorney, Douglas Werman, and Russell Olsen.

In the case of Vitelo v. Aguire, (Dist. Court, ND Illinois 2010), Plaintiff Vitelo filed his original Complaint on February 2018. District Judge Coar, based on the Parties agreement set the date amend pleadings and add parties for September 25, 2009. On April 26, 2010, more than a 7 months later, Plaintiff Vitelo sought to add a party and amend pleadings to dd (2) claims under FLSA, after the deadline date. Plaintiff Vitelo argued that he did not know the name full name of the party. The matter was transferred to the Magistrate for discovery supervision. Defendant, Brazzaz, opposed the motion based on it being untimely and Plaintiff had not established good cause. On August 16, 2010, This Magistrate determined the following: 1) The Parties had agreed that on January 10, 2010, no further amendments would be made in the case. 2) The scheduling order had been set which "put (the) motion within the purview of Rule 16(b), rather than only within the more liberal standard of Rule 15(a)." 3) Plaintiff did not provide good cause or "reason for waiting for … over six months to seek this amendment and denied his motion to add a claim." 4) Defendant Brazzaz conceded that Vitelo's reason to add party as a defendant — because Defendant Brazzaz did not have enough money — would generally suffice as "good cause." 5) Plaintiff Vitelo learned the full name of the party he sought to add on April 13, 2010,

and "acted quickly" (13 days later) "after he learned the identity … to file his motion to amend, and we find that sufficient to establish "good cause." And because no additional discovery will be required — though it has nonetheless been extended to September 27, 2010 — this amendment does not prejudice Brazzazz." As a result, Plaintiff's motion to add a party was granted.

In the current case, Plaintiff seeks to add the Proposed Defendants and add new relevant facts for the Court to determine Title VII. During the depositions of Megan Elberts, Lisa Gasperec, Martin Burke, Trudy Buehler, and Michael Dawson, Plaintiff was able confirm the true identities of Plaintiff's employers. In addition, on July 2, 2021, Defendant provided its insurance liability documents which confirmed the identity of CBBEL. The insurance documents also state, "Liability Coverages, Separate Liability Coverages, And Third-Party Liability Insuring Agreements Are Written On A Claims-Made Basis And Cover Only Claims Made Against Insureds During The Policy Period." However, CBBEL is named as the insured and GEC is not named as an insured or additional insured. Plaintiff submits that if the Court were to grant her a judgement against Defendant GEC, any claims would have be processed through CBBEL's limited liability insurance policy. In addition, the policy appears to have expired on April 1, 2020. For this reason, Plaintiff has prepared a motion to compel a current policy for insurance liability for Defendant GEC.

Prior to the Court's deadline, Plaintiff believed she could not amend her Complaint without confirming the names of these entities and diligently sought to confirm relevant facts so that her amended Complaint would not be deemed to be based on mere theories or beliefs. Defendant has put forth new information and claims regarding Mackie, CBBEL and TBG, that was not previously known to Plaintiff prior to the deadline. Defendant's attorneys have falsely

claimed that Mackie, CBBEL and TBG were not companies related to GEC. Defendant's attorneys have consistently claimed that Megan Elberts' family and their involvement were irrelevant because they were not identified on the Complaint. In addition, this Magistrate is already aware of the difficulty Plaintiff has experienced serving the non-party subpoenas. During Martin Burke's deposition he admitted that he had already received the subpoena from Megan Elberts, In the Vitelo v. Brazzazz case, although the Court determined that Vitelo had "somewhat questionably sat on the limited information he had about Kochari" and hesitated to conclude that Plaintiff Vitelo had "shown no good cause" the Court allowed Plaintiff to add an additional party. In the current case, Plaintiff has completed the depositions of Proposed Defendants Mackie; Martin Burke; Trudy Buehler; Megan Elberts; and Lisa Gasperec. Plaintiff's Motion to amend is now (14) days since receiving the new documents from Defendant's attorneys on July 2, 2021. Plaintiff acknowledges that Christopher Burke on behalf of himself and CBBEL have not participated in discovery. For this reason, Plaintiff shas prepared a separate motion to extend discovery. In the event, the Magistrate determines not extend the discovery deadline. Plaintiff asks that she be allowed to submit her Amended Complaint. Unlike, Vitelo, Plaintiff seeks to account for the missed deadline, and immediately acknowledge the proper FRcP Rule that applies to Plaintiff's proposed Motion. Plaintiff also acknowledges the close of discovery as set by the Court is July 17, 2021. Plaintiff respectfully submits this would be her first amended Complaint and the current Defendant would not be prejudiced because they have known Plaintiff's claims since Initial Disclosures were submitted. In addition, GEC has now provided their liability insurance documents that identifies CBBEL as the insured for the current case. Plaintiff respectfully asks that Christopher Burke, on behalf of Christopher B. Burke Engineering be allowed to respond to the Complaint. For the reasons provided herein, Plaintiff respectfully

asks this Magistrate to Grant her Motion For Leave to File Plaintiff's First Amend Complaint

and to add Christopher B. Burke Engineering' Christopher B. Burke; Mackie Consultants, LLC;

Martin T. Burke; Megan B. Elberts; Lisa M. Gasperec; and Trudy K. Buehler as Defendants.

**DATED: July 17, 2021**

Respectfully Submitted by:

/S/ Rachel M. Hubbard_____
Rachel M. Hubbard, Plaintiff pro se

Rachel M. Hubbard
615 W. Talcott Road, #1
Park Ridge, Illinois 60068
847-361-8807
Hubbard2000@att.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2021, Plaintiff pro se served upon Defendant her Motion For Leave to File Motion to Amend Complaint via email at the following addresses. Defendant has asked Plaintiff not to provide paper copies due to Covid-19 conditions.

Ms. Violet Mendiola
kilens@litchfieldcavo.com

Ms. Victoria Vanderschaaf
vanderschaaf@litchfieldcavo.com

**DATED: July 17, 2021**

Respectfully Submitted by:

/S/ Rachel M. Hubbard_____
Rachel M. Hubbard, Plaintiff pro se

Rachel M. Hubbard
615 W. Talcott Road, #1
Park Ridge, Illinois 60068
847-361-8807
Hubbard2000@att.net

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **RACHEL M. HUBBARD,** | ) | |
| | ) | |
| **Plaintiff, pro se** | ) | **Case No.: 1:20-cv-06680** |
| | ) | |
| **v.** | ) | **Judge Edmond E. Chang** |
| | ) | |
| **GASPEREC ELBERTS** | ) | **Case No.: 1:20-cv-06680** |
| **CONSULTING, LLC;** | ) | |
| **MACKIE CONSULTANTS, LLC;** | ) | |
| **CHRISTOPHER BURKE B.** | ) | |
| **ENGINEERING, LTD;** | ) | |
| **MARTIN T. BURKE;** | ) | |
| **TRUDY K. BUEHLER,** | ) | |
| **MEGAN B. ELBERTS;** | ) | |
| **AND LISA M. GASPEREC,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES, Plaintiff, RACHEL M. HUBBARD, and complains of Defendants,

GASPEREC ELBERTS CONSULTING, LLC, an Illinois limited liability corporation;

MACKIE CONSULTANTS LLC, an Illinois limited liability corporation; CHRISTOPHER B.

BURKE ENGINEERING LTD, an Illinois Limited Company; CHRISTOPHER B. BURKE, an

individual; MEGAN B. ELBERTS, an individual; LISA M. GASPEREC, an individual;

MARTIN T. BURKE, an individual; and TRUDY K. BUEHLER, an individual. In support ,

states as follows for her First Amended Complaint:

**Nature of the Case**

1.      Plaintiff, Rachel M. Hubbard, (hereinafter "Plaintiff" or "Hubbard") was recruited by Christopher Burke LTD (hereinafter "CBBEL") and Mackie Consultants LLC (hereinafter "Mackie") for a CAD position with Gasperec Elberts LLC (hereinafter "GEC").

2.      On or about August 16, 2021, Plaintiff was hired by Mackie and GEC as a Computer Aided Design ("CAD") Technician at GEC office when it was located at 9501 W. Devon, Suite 702, Rosemont, Illinois.

3.      On or about August 28, 2021, Plaintiff began her employment at GEC offices as a Computer Aided Design ("CAD") Technician.

4.      CBBEL sponsored Plaintiff's benefits through The Burke Group (hereinafter "TBG").

5.      Mackie and CBBEL determined the conditions of Plaintiff's employment.

6.      This is an individual action brought by Plaintiff against Defendant Gasperec Elberts Consulting, LLC, Mackie Consultants LLC and Christopher Burke Engineering LTD (hereinafter "Defendants" or "GEC") for violations of the federal Equal Pay Act, 29 U.S.C. § 206 (d); Illinois Equal Pay Act, 820 ILCS § 112/1 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

7.      Plaintiff alleges violations based on unequal pay based on sex/gender, sex/gender discrimination, and retaliation.

8.      As a result of the conduct by Defendants, Plaintiff has and continues to suffer from lost wages and benefits and has and continues to suffer from significant related emotional distress.  Plaintiff seeks all damages she is entitled to under law for Defendant's unlawful acts alleged herein, including those for unequal pay, lost wages and benefits, liquidated damages, damages for emotional distress and other compensatory damages, as well as punitive damages

for intentional and egregious conduct, and all reasonable attorneys' fees and costs incurred by Plaintiff in this matter.

## Jurisdiction and Venue

9.     This Court has jurisdiction pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and the Federal Equal Pay Act, 29 U.S.C. 206(d) pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because substantial parts of the events or omissions giving rise to the claims herein occurred in this judicial district and this is where the Plaintiff suffered the primary harm from Defendant's actions.

### Parties

11.     Plaintiff, is a female citizen of the United States and at all relevant times did reside and currently resides in Cook County, Illinois.

12.     Defendant GEC is an Illinois limited liability corporation engaged in the business of providing professional engineering and surveying services, with its office located at 1401 Branding Avenue, Suite 230, Downers Grove, Illinois.

13.     Defendant Megan B. Elberts, individually, and dba Gasperec Elberts Consulting LLC.

14.     Defendant Lisa M. Gasperec, individually, and dba Gasperec Elberts Consulting LLC.

15.     Defendant Mackie is an Illinois limited liability corporation engaged in the business of providing professional engineering and surveying services, with its office located at 9575 W. Higgins Road Suite 500, Rosemont, Illinois.

16.     Defendant, Martin T. Burke, individually, and dba Mackie Consultants LLC, and Mackie Consultants LLC.

17.     Defendant Trudy K. Buehler, individually, and dba Mackie Consultants LLC.

18.     Defendant CBBEL is an Illinois limited liability company engaged in the business of providing professional engineering and surveying services, with its office located at 9575 W. Higgins Road Suite 600, Rosemont, Illinois.

19. Defendant, Christopher B. Burke, individually, and dba Christopher B. Burke LTD.

20.     At all relevant times, Defendants qualified as an employer as defined by Title VII of the Civil Rights Act 42 U.S.C § 2000e(b).

21.     At all relevant times, Plaintiff qualified as an employee as defined by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

22.     At all relevant times, Defendants qualified as an employer as defined by the Federal Equal Pay Act, 29 U.S.C. § 206(d) and the Illinois Equal Pay Act, 820 ILCS 112/5.

23.     At all relevant times, Plaintiff qualified as an employee as defined by the Federal Equal Pay Act, 29 U.S.C. § 206(d) and the Illinois Equal Pay Act, 820 ILCS 112/5.

24.     At all relevant times, Plaintiff performed her job duties satisfactorily and to the reasonable expectations of Defendant GEC.

## Administrative Requirements

25.     Plaintiff complied with all administrative requirements by filing a timely Charge of Discrimination with the U.S. EEOC, based on Equal Pay violations, sex/gender discrimination and retaliation on November 20, 2019.  A true and correct copy of such Charge of Discrimination is attached as Exhibit 1.

26.     On or about August 14, 2020, Plaintiff received the Notice of Dismissal and Suit

Rights on the above-mentioned Charge of Discrimination and, accordingly, this Complaint is

timely filed.  A true and correct copy of the Notice of Dismissal and Suit Rights is attached as

Exhibit 2.

## General Allegations

27.     On August 7, 2017, Plaintiff interviewed with CAD Mackie's Manager, Michael

Dawson via phone for a CAD Technician position.

28.     On August 16, 2017, Plaintiff met with Martin Burke, President of Mackie and

Megan Elberts, manager of GEC for a position a CAD position at GEC's office located at 9501

W. Devon Avenue, Suite 702, Rosemont, Illinois.

29.     Immediately after the interview, Martin Burke and Megan Elberts called Plaintiff and

extended an offer of $25.00 per hour.

30.     On August 17, 2017, Plaintiff received an offer letter from Megan Elberts.

31.     On August 28, 2017, Plaintiff began working as a CAD Technician at GEC offices.

32.     According to Plaintiff's applications for benefits, TBG is listed as her employer.

33.      According to GEC hiring paperwork and invoices for clients, Plaintiff was billed as a

"CAD Technician II" rate. The paperwork also identified Mike Dawson as the CAD Technician.

34.     During Plaintiff's employment, Defendant's Mackie, CBBEL and GEC were member

companies of TBG.

35.     Upon information and belief, Christopher Burke and Martin Burke were managing

partners of TBG during her employment.

36.     Defendant Christopher Burke is the CEO and Founder of CBBEL.

37.    Defendants Mackie, CBBEL and GEC determined the conditions of Plaintiff's employment.

38.    During Plaintiff's employment, Defendant Martin Burke approved Plaintiff's overtime; purchased vehicles for GEC through Mackie and a company called Lynn Consulting LLC; shared management of GEC; helped manage GEC, determined the pricing for GEC's proposals; shared employees with GEC, and provided GEC's software, tools, and equipment.

39.    On September 12, 2017, Defendant GEC obtained Women and Disadvantaged-owned Business Enterprise certifications ("WBE" and "DBE" certifications from the Chicago's Department of Procurement.

40.    In or around November 2017, Defendant Trudy Buehler began working at GEC.

41.    In or around December 2017, Plaintiff learned that Defendants Martin Burke and Megan Elberts shared common ownership in Lynn Consulting LLC.

42.    In or around December 2017, Plaintiff learned Defendants Martin Burke, Christopher Burke and Megan Elberts has purchased a minority-owned firm called Macias & Associates LP, a Texas Limited Partnership, prior to GEC receiving WBE\DBE certifications, in or around September 2015.

43.    Throughout her employment, Defendant Trudy Buehler perform worked for Mackie and GEC. Plaintiff learned that Trudy Buehler was also an owner of Mackie.

44.    After witnessing and learning information about the business practices and conduct of Defendants, Plaintiff began to suspect Defendants of WBE\DBE fraud.

45.    In or around August 2018, Plaintiff, through an attorney, a FOIA request for GEC's WBE and DBE certification was sent to the City of Chicago Department of Procurement.

46.    On or about September 17, 2018, Defendant GEC emailed Plaintiff an invitation to meet with GEC's WBE\DBE attorney, Maura Downs under the guise of WBE training.

47.    On or about September 25, 2018, GEC Plaintiff and certain GEC employees met with Maura Downs in the meeting room of Rosemont, Illinois' Village Hall. Plaintiff was required to sit directly in front of Ms. Downs, and she proceeded to warn the GEC employees not to suggest that we worked for CBBEL or Mackie, and not to imply that GEC was a shoe in for any government contract work. As Plaintiff was leaving the meeting Ms. Downs asked Plaintiff if she knew Ms. Jackson, the individual who submitted the FOIA on my behalf. Immediately after the meeting, Plaintiff feared GEC would find a reason to fire her.

48.    Immediately after the meeting Plaintiff's supervisor, Russell Olsen and Adam Merry had a conference call with CBBEL regarding WBE\DBE training.

49.    On or about October 2018, Defendant hired Ilir Shtembari ("Shtembari") who is male, as a CAD Technician.

50.    Both Plaintiff and Mr. Shtembari performed the same job duties as CAD Technicians and both reported to Defendant's Survey Manager and Engineering Department.

51.    Both Plaintiff and Mr. Shtembari's jobs as CAD Technicians required identical skill, effort and responsibility and were performed under identical working conditions in the same physical office space.

52.    Upon information and belief, Plaintiff and Mr. Shtembari had substantially the same qualifications and relevant experience.

53.    Defendant compensated Mr. Shtembari at an hourly rate of $30.00 per hour.

54.    In or around June of 2019, Plaintiff complained to Megan Elberts, managing principal

of GEC, that despite performing the same job duties, having the same responsibility and having similar qualifications and experience, Plaintiff was compensated less than her male counterpart, Mr. Shtembari. Ms. Elberts denied that Mr. Shtembari was compensated at a higher rate than Plaintiff but agreed to raise Plaintiff's pay to $26.50 per hour, which remained significantly less than the $30.00 per hour Mr. Shtembari received.

55.     On or about April 16, 2019, Plaintiff was informed that GEC was moving its offices from Rosemont, Illinois to Downers Grove. round April 2019,

56.     After Plaintiff received notice that GEC was moving its offices, in or around April, 2018, Plaintiff learned that Ilir Schtemabri was being compensated more than Plaintiff despite performing the same work.

57.     On or about September 6, 2019, Plaintiff, through her counsel, sent a demand letter seeking payment for Defendant's violations of the Equal Pay Act and Illinois Equal Pay Act based on Mr. Shtembari's compensation compared to her own compensation.

58.     Shortly after Defendant received Plaintiff's demand letter in September of 2019, Defendant began to engage in retaliatory acts which included but were not limited to:

   a.   Subjecting Plaintiff to harsher and more demanding terms and conditions of employment, such as criticizing her work product and professional conduct while in the workplace;

   b.   Falsely accusing plaintiff of inappropriate behavior, including falsely accusing Plaintiff of threatening a co-worker;

   c.   Attacking Plaintiff's work performance; and

   d.   Falsely accusing Plaintiff of modifying her work hours without permission.

59.     On November 1, 2019, Defendant presented Plaintiff with a "Final Written Warning"

which falsely documented that during the course of Plaintiff's employment she had "shown a pattern of inability to take direction from your manager or supervisor without a contentious response."

60.    Prior to her complaint of gender discrimination and violations of the Equal Pay Acts, Defendant provided Plaintiff with positive employee evaluations in 2017 and 2018.

61.    On or about November 1, 2019, Defendant instructed Plaintiff that "under no circumstances should she return to work on Monday, November 4, 2019."

62.    On November 4, 2019, Plaintiff emailed Defendant GEC stating that she would respect their instruction and would not work on that Monday.  In such email, Plaintiff further stated that she valued her employment with GEC, she was not resigning or abandoning her employment and she planned to work the following day.  Plaintiff additionally complained that Defendant restricting her from working was further retaliation for her complaints of gender discrimination and violations of the Equal Pay Acts.

63.    Beginning in October and continuing through early November 2019, Defendant GEC offered various settlement terms to Plaintiff to resolve her complaints of violations of the Equal Pay Acts.  Plaintiff never accepted any such settlement terms.

64.    Immediately following the November 1, 2019, email instructing Plaintiff to "not return to work under any circumstances", Defendant GEC presented Plaintiff with a "Last Chance Agreement" and a "Settlement Agreement" and was told that she needs to either sign the Last Chance agreement or sign the settlement agreement.

65.    Among other terms, the "Last Chance Agreement" required Plaintiff to admit to

behavior she did not engage in while she was employed at GEC. The Settlement Agreement set forth terms which Plaintiff did not agree to accept. Consequently, this scenario amounted to discharge.

66.     As a result, on or about November 1, 2019, Defendant effectively terminated Plaintiff's employment in retaliation for Plaintiff's complaints of gender discrimination and violations of the Equal Pay Acts.

## COUNT I
### Violation of the Title VII of the Civil Rights Act – Discrimination

67.     Plaintiff repeats and re-alleges paragraphs 1-66 above, as paragraph 67, as if fully set forth herein.

68.     Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* by treating Plaintiff unequally on the basis of her sex (female) by paying her wages which were less than those it paid to a male employee for substantially similar work, and by subjecting Plaintiff to unequal and inferior terms and conditions of employment as set forth herein.

69.     Defendant's violations of Title VII were committed knowingly, maliciously and/or recklessly, and accordingly Defendant is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff, RACHEL HUBBARD, respectfully prays that this Court enter an Order:

(a) Declaring the conduct of Defendant GASPEREC ELBERTS CONSULTING, LLC; MACKIE CONSULTANTS, LLC; CHRISTOPHER BURKE ENGINEERING, LTD; MEGAN B. ELBERTS; LISA M. GASPEREC; MARTIN T. BURKE; CHRISTOPHER B. BURKE; TRUDY K. BUEHLER, and their respective agents/employees, as described herein, is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;

(b) Awarding Plaintiff Hubbard compensatory damages;

(c) Awarding Plaintiff Hubbard all lost wages and benefits;

(d) Awarding Plaintiff Hubbard punitive damages;

(e) Awarding Plaintiff Hubbard reasonable attorneys' fees and costs; and

(f) Awarding Plaintiff any other relief she is entitled to under law or that this Court may deem as just and warranted.

## COUNT II
## Violation of the Illinois Equal Pay Act

70.     Plaintiff repeats and re-alleges paragraphs 1-66 above, as paragraph 70, as if fully set forth herein.

71.     Defendant GEC's payment of Plaintiff of compensation in an amount less than it paid to a male employee for the same or substantially similar work, the performance of which required equal skill, effort and responsibility, was a continuing violation of the Illinois Equal Pay Act, 820 ILCS § 112/1 *et seq.* ("IEPA").

72.     The IEPA provides for recovery in a civil action of the "entire amount of the underpayment, together with interest and the costs and reasonable attorneys' fees as may be allowed by the Court and as necessary to make the employee whole."

WHEREFORE, Plaintiff, RACHEL HUBBARD, respectfully prays that this Court enter an Order:

(a) Declaring the conduct of Defendant GASPEREC ELBERTS CONSULTING, LLC; MACKIE CONSULTANTS, LLC; CHRISTOPHER BURKE ENGINEERING, LTD; MEGAN B. ELBERTS; LISA M. GASPEREC; MARTIN T. BURKE; CHRISTOPHER B. BURKE; TRUDY K. BUEHLER, and their respective agents/employees, as described herein, is in violation the Illinois Equal Pay Act, 820 ILCS § 112/1 *et seq.*;

(b) Awarding Plaintiff Hubbard money damages equal to the entire amount of each underpayment as the Court may determine;

(c) Prejudgment interest on the amount of each underpayment from the date such compensation should have been paid to the date of the payment;

(d) Awarding Plaintiff Hubbard reasonable attorneys' fees and costs; and

(e) Awarding Plaintiff any other relief she is entitled to under law or that this Court may deem as just and warranted.

## COUNT III
## Violation of the Federal Equal Pay Act

73. Plaintiff repeats and re-alleges paragraphs 1-66 above, as paragraph 73, as if fully set forth herein.

74. Defendant GEC's payment of Plaintiff of compensation in an amount less than it paid to a male employee for the same or substantially similar work, the performance of which required equal skill, effort and responsibility, was a continuing violation of the federal Equal Pay Act, 29 U.S.C. § 206(d). ("EPA").

75. Plaintiff is entitled to recover the wages which Defendant should have paid to her during her employment so as to be equivalent to wages paid to a male co-worker, in an amount to be determined by the Court, together with an equal amount as liquidated damages.

WHEREFORE, Plaintiff, RACHEL HUBBARD, respectfully prays that this Court enter an Order:

(a) Declaring the conduct of Defendant GASPEREC ELBERTS CONSULTING, LLC; MACKIE CONSULTANTS, LLC; CHRISTOPHER BURKE ENGINEERING, LTD; MEGAN B. ELBERTS; LISA M. GASPEREC; MARTIN T. BURKE; CHRISTOPHER B. BURKE; TRUDY K. BUEHLER, and their respective agents/employees, as described herein, is in violation the federal Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*;

(b) Awarding Plaintiff Hubbard money damages equal to the entire amount of each underpayment as the Court may determine;

(c) Awarding Plaintiff Hubbard liquidated damages;

(d) Prejudgment interest on the amount of each underpayment from the date such compensation should have been paid to the date of the payment;

(e) Awarding Plaintiff Hubbard reasonable attorneys' fees and costs; and

(f) Awarding Plaintiff any other relief she is entitled to under law or that this Court may deem as just and warranted.

**COUNT IV**
**Retaliation**

76.     Plaintiff repeats and re-alleges paragraphs 1-66 above, as paragraph 76, as if fully set forth herein.

77.     Plaintiff engaged in protected activities of complaining for what she believed in good faith to be discrimination based on sex and unequal pay in violation of the Illinois Equal Pay Act and the federal Equal Pay Act, as set forth herein.

78.     Plaintiff engaged in protected activities of reporting for what she believed in good faith to be WBE and MBE fraud based on the GEC's application for certification with the City of Chicago and the collective efforts of Defendants in violation of Illinois Whistleblower Act.

79.     Retaliation for complaining of sex/gender discrimination and for complaining of unequal pay based on gender/sex is prohibited by Title VII of the Civil Rights Act and the Illinois Equal Pay Act and the federal Equal Pay Act, respectively.

80.     Retaliation for participating in whistleblower activities is prohibited by the Illinois Whistleblower Act.

81.     Defendants retaliated against Plaintiff for her protected acts of complaining of sex/gender discrimination and unequal pay based on sex/gender, and for requesting information about GEC's application for WBE and DBE certification with the City of Chicago Office of

Procurement by taking adverse employment actions against her, subjecting her to harsher and more negative terms and conditions of employment, subjecting her to unjustified discipline and terminating her employment, all as set forth herein.

82. Defendants' retaliatory actions were done with knowledge, maliciously and/or recklessly.

83. As a direct and proximate result of Defendants retaliatory actions, Plaintiff has sustained damages including lost income and employment benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff, RACHEL HUBBARD, respectfully prays that this Court enter an Order:

(a) Declaring the conduct of Defendants GASPEREC ELBERTS CONSULTING, LLC; MACKIE CONSULTANTS, LLC; CHRISTOPHER BURKE ENGINEERING, LTD; MEGAN B. ELBERTS; LISA M. GASPEREC; MARTIN T. BURKE; CHRISTOPHER B. BURKE; TRUDY K. BUEHLER, and their respective agents/employees, as described herein, is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and/or the Illinois Equal Pay Act, 820 ILCS 112/1 *et seq.* and/or the federal Equal Pay Act, 29 U.S.C. § 206(d);

(b) Awarding Plaintiff Hubbard compensatory damages;

(c) Awarding Plaintiff Hubbard all lost wages and benefits;

(d) Awarding Plaintiff Hubbard punitive damages to the extent allowed under law;

(e) Awarding Plaintiff Hubbard reasonable attorneys' fees and costs; and

(f) Awarding Plaintiff any other relief she is entitled to under law or that this Court may deem as just and warranted.


**PLAINTIFF DEMANDS A JURY TRIAL**

**DATED: July 17, 2021**

Respectfully Submitted,

_____

Rachel Hubbard

Rachel Hubbard
615 W. Talcott Road, Unit 1
Park Ridge, Illinois 60068
847-361-8807
Hubbard2000@att.net

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2020-01132 |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| MISS RACHEL HUBBARD | (847) 361-8807 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 615 W. TALCOTT ROAD, PARK RIDGE, IL 60068 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| GASPEREC ELBERTS CONSULTING | 15 - 100 | (847) 868-1833 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1401 BRANDING AVENUE, SUITE 230, DOWNERS GROVE, IL 60515 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☒ OTHER (Specify) Equal Pay | Earliest: 10-08-2018  Latest: 11-01-2019<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I WAS HIRED BY RESPONDENT IN OR AROUND AUGUST 2017. MY MOST RECENT POSITION WAS CAD DRAFTER. I WAS PAID LESS THAN MY LESS-QUALIFIED MALE COWORKER. I COMPLAINED TO RESPONDENT. SUBSEQUENTLY, I WAS DISCIPLINED AND DISCHARGED.

I BELIEVE I HAVE BEEN DISCRIMINATED AGAINST BECAUSE OF MY SEX, FEMALE, AND IN RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AND THE EQUAL PAY ACT OF 1963.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Rachel Hubbard on 11-20-2019 11:10 AM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT 2

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Rachel Hubbard**<br>615 W. Talcott Road<br>Park Ridge, IL 60068 | From: **Chicago District Office**<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2020-01132** | **Brandi Kraft,**<br>**Investigator** | **(312) 872-9662** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman/msd*                                          8/12/2020

| Enclosures(s) | **Julianne Bowman,**<br>**District Director** | *(Date Mailed)* |
|---|---|---|

cc:   **GASPEREC ELBERTS CONSULTING**
**c/o Peter Kim**
**Litchfield Cavo LLP**
**303 W. Madison St.**
**Suite 300**
**Chicago, IL 60606**