IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RACHEL M. HUBBARD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-06680 |
| | ) |
| GASPEREC ELBERTS CONSULTING, LLC | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND ADD PARTIES**

Defendant, GASPEREC ELBERTS CONSULTING, LLC ("GEC" or "Defendant"), by and through its attorneys, Kearney W. Kilens and Victoria Vanderschaaf of LITCHFIELD CAVO LLP, and for its Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint and Add Parties ("Motion"), states as follows:

### I. INTRODUCTION

On November 10, 2020, Plaintiff filed her Complaint alleging unequal pay and retaliation claims against her former employer GEC. [*Doc. 1*] On December 11, 2020, this Court ordered fact discovery to close on July 17, 2021 and set May 3, 2021 as the deadline to add parties or amend pleadings. [*Doc. 14*] Plaintiff now seeks to amend her Complaint to substantially expand her factual allegations and add seven new defendants. Plaintiff's Motion comes on the day that ***fact discovery closed and two-and-a-half months past the deadline to add parties or amend pleadings.*** More significantly, however, Plaintiff's proposed amendment to assert an "integrated enterprise" theory does not salvage Count I or Count IV of the Complaint that rely upon Title VII, which are defeated as a matter of law by the small firm exception. As detailed below, the record clearly establishes that none of the three approaches to an "integrated enterprise" theory can be achieved and therefore the small firm exception still applies. Further, Plaintiff's proposed amendment to

assert an additional retaliation theory under Count IV based on allegations that she reported suspected WBE/DBE fraud suffers from the fatal problem that, even as alleged, there is no causal link between the alleged activity and the alleged discharge (the record strongly supports that Plaintiff resigned). Case law requires the two alleged events to be "very close" and Plaintiff simply cannot allege that due to more than a year's time separating the two alleged events.

Simply put, Plaintiff cannot allege and the record does not support her proposed amendments. To the contrary, the record establishes that Plaintiff's legal theories fail as a matter of law. The Parties have completed extensive and exhaustive discovery. To date, voluminous documents were produced and eight depositions have occurred. All the "evidence" Plaintiff has gathered only supports the actual facts– GEC was part of a multiemployer plan, in which companies headed by the family members of one of GEC's principals, also are signatories. It is clear, however, that Plaintiff has been seeking to expand her fishing expedition and continue her efforts to harass GEC. The six depositions that Plaintiff took either reached the seven hour limit or took a substantial amount of time (i.e., four of the witness' testimony supported they have *no knowledge* of Plaintiff's pay or the events leading to the end of her employment yet Plaintiff deposed some of these witnesses for four to six hours yielding no or minimally probative information). GEC has repeatedly attempted to resolve this matter in good faith and is prepared to move for summary judgment. If this Court were to grant Plaintiff's Motion it would require GEC to incur substantially more costs and begin this whole process back at square one. GEC should not have to suffer this extreme prejudice for claims that verifiably have no factual or legal merit. Plaintiff's Motion should be denied.

## II. LEGAL STANDARD

Leave to amend should be "freely given" ***but only if*** "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When one party seeks to add additional parties the amendment will not be permitted simply because the requirements of Rule 16 have been met. *Ty Inc. v. Esquire Licensing LLC*, No. 18 CV 2726, 2019 WL 12295585, at *2 (N.D. Ill. Nov. 18, 2019). Courts may deny leave to amend if there is an apparent reason for doing so, such as "undue delay, bad faith or dilatory motive on the part of the movant. Repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment." *Liu v. T & H Mach.*, 191 F. 3d 790, 794 (7th Cir. 1999). The Court can also consider the burden that granting leave to amend would place on the judicial system. *Perrian v. O'Grady*, 958 F. 2d 192, 195 (7th Cir. 1992).

## III. ARGUMENT

### A. PLAINTIFF'S MOTION IS UNSUPPORTED BY THE RECORD.

Plaintiff does not provide any evidence to corroborate her assertion that her Motion is supported by the record. GEC vehemently contests the accuracy of what Plaintiff's Motion purports to be the "facts." The majority of Plaintiff's "facts" are inconsequential to whether Plaintiff can state her proposed legal theories. Rather, as evidenced below, the record undoubtedly supports that Plaintiff's legal theories fail as a matter of law. Fact discovery has closed and the record is complete. There is no reason for this Court to accept the statements made in Plaintiff's Motion as true.

### B.   FUTILITY OF PLAINTIFF'S PROPOSED AMENDMENT.

#### a. Plaintiff's Title VII Claims Cannot Be Salvaged with the Additional Corporate Entities.

Allowing Plaintiff to assert her theories of liability against the seven proposed defendants would be futile. When GEC timely filed its Answer and Affirmative Defenses on December 3, 2020 (and previously in its underlying response to Plaintiff's EEOC Charge), it asserted the small firm exemption, namely that it was not an "employer" as defined by Title VII because it did not have fifteen or more employees on its payroll in any of the calendar weeks in 2019 or 2020. [*Doc. 10*] Plaintiff has been grasping for ways to get around this defense ever since.

Plaintiff's Motion explains that she seeks to add the seven proposed defendants, namely Mackie Consultants, LLC ("Mackie"), Christopher Burke B. Engineering, Ltd. ("CBBEL"), Martin Burke (President of Mackie), Christopher Burke (Chief Executive Officer of CBBEL), and Trudy Buehler ("Buehler") (the Vice President of Mackie and a former GEC employee), for the Court to determine whether any are her "employer" under Title VII. [*Plaintiff's Motion at p. 23*] Neither Plaintiff's Motion nor her draft amendment provide any justification for naming the five individuals as defendants. As to the two proposed corporate defendants (Mackie and CBBEL), Plaintiff asserts an "integrated enterprise" theory of liability.[1] Plaintiff's theory fails as a matter of law.

An employer is part of an "integrated enterprise" and is thus not allowed to invoke the small firm exemption to Title VII when: (1) the employer has split itself into a number of corporations for the express purpose of avoiding liability for discrimination; (2) the affiliate

---

[1] These affiliates are also not proper Title VII defendants because none of the three scenarios apply: (1) the affiliate maintains an employment relationship with Plaintiff; (2) the affiliate forfeited its limited liability (i.e., the three approaches provided below to justify piercing the corporate veil); and (3) liability for the misdeeds of a predecessor through successor liability. Worth v. Tyer, 276 F. 3d 249 (7th Cir. 2001).

4

directed the discriminatory act or practice of which the plaintiff complains; or (3) when conditions are present for "piercing the corporate veil" to allow a creditor of an employer to sue a parent or other affiliate. *Prince v. Appleton Auto, LLC*, 978 F. 3d 530, 534 (7th Cir. 2020); *see also Papa v. Katy Indus., Inc.,* 166 F.3d 937, 941 (7th Cir. 1999). The record is already clear that Plaintiff cannot succeed on any of the three approaches.

First, GEC, Mackie and CBBEL are not corporations split up for the express purpose of evading Title VII. GEC was a young company with less than 15 employees when Plaintiff was employed there, and it now has over 20 employees on its payroll. Mackie has approximately 65 employees. [*Relevant pages of Martin Burke's deposition testimony attached hereto as* **Exhibit A** *at 70:16-19*] According to CBBEL's company website (because Plaintiff did not seek to depose Christopher Burke), CBBEL has approximately 200 employees.[2] All three entities are currently "employers" under Title VII. Moreover, Plaintiff has failed to even allege (because the evidence does not support) that any of the corporate entities at issue were set up for the purpose of avoiding liability under the anti-discrimination law. *See e.g., Worth v. Tyler*, 276 F.3d 249, 261 (7th Cir. 2001) (noting the lack of evidence that the corporate entities were set up to avoid anti-discrimination liability); *Seeman v. PJMP, LLC*, 2017 WL 3311039, at *3 (N.D. Ill. Aug. 3, 2017) (noting that the affiliate was not formed with the express purpose to avoid liability, but instead to enable continued provision of workers' compensation insurance).

Second, the documents and witness testimony make explicitly clear that only GEC set Plaintiff's rate of pay, set her comparator's rate of pay, issued her discipline and was involved in the events leading to the end of her employment. [*GEC's Answers to Plaintiff's Interrogatories attached hereto as* **Exhibit B** *at No. 9*]; *see e.g., Seeman*, 2017 WL 3311039, at *3 (noting that

---

[2] *See* http://cbbel.com/about/

even if the plaintiff alleged that the persons responsible for his alleged termination owned the affiliate or served as the affiliate's employees, aggregation under the third prong "is inappropriate absent evidence that they were acting outside their … roles [at his employer] in (allegedly) firing him"). Further, Martin Burke firmly testified that he did not set Plaintiff's or her comparators pay or had any authority to discipline Plaintiff. [*Exhibit A at 137:7-19 and 138:24-139:7*] Martin Burke further testified that he barely interacted with Plaintiff and that he had no knowledge about the particulars of her employment for GEC. [*Exhibit A at* 136:9-*23 and 151:21-152:10*] The only "evidence" Plaintiff has to support that the employment decisions at issue were directed by an individual or entity outside of GEC is her own unsubstantiated speculation.

Third, piercing the corporate veil is not favored by Illinois courts and is "stringently applied." *Bright v. Roadway Servs., Inc.*, 846 F. Supp. 693, 700 (N.D. Ill. 1994). To do so under Illinois law, two elements must be met: (1) there must be such unity of interest and ownership that the personalities of the corporation and the individual [or other corporation] no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Id*. "Piercing the corporate veil for the purpose of employee aggregation to meet the 15-employee threshold for coverage as employer under Title VII requires a plaintiff-employee show more than a degree of integration of corporate operations." *Prince,* 978 F. 3d at 534. Indeed, the "[t]he corporate veil is pierced, when it is pierced, not because the corporate group is integrated, but (in the most common case) because it has neglected forms intended to protect creditors from being confused about whom they can look to for payment of their claims." *Papa*, 166 F.3d at 943. Yet, Plaintiff has not asserted and no evidence in the record shows that forms have been neglected in this case so as to allow for piercing of the corporate veil.

6

In addition, as the record confirms, Plaintiff cannot show more than this insufficient degree of alleged "integration." GEC was a small consulting engineering firm that during Plaintiff's employment was part of a multi-employer benefit plan administered by The Burke Group, Ltd. ("TBG"). [***Exhibit B*** *at No. 4*] Mackie and CBBEL were also signatories to this plan. [*Id. See also relevant pages of part one of Megan Elberts' deposition attached hereto as* ***Exhibit C*** *at 35:21-36:25*] Martin Burke, the President of Mackie, and Christopher Burke, the CEO of CBBEL, are family relations of Megan Elberts, one of GEC's Principals along with Lisa Gasperec ("Gasperec"). [*Exhibit C at 17:1-3 and 30:9-14*] As is commonplace in the engineering industry, GEC also occasionally acted as a subconsultant to Mackie and CBBEL. [*Exhibit B at No. 4*] None of this, however, is sufficient to pierce the corporate veil to establish an "integrated enterprise" that defeats the small firm exception to Title VII. Of course there are connections amongst these entities - they were all part of the same multiemployer benefit plan, individuals from the different companies within the same industry (and certainly family members) go to each other for professional advice and they sometimes collaborate on projects. *See Papa,* 166 F. 3d at 940 (observing that small firms must integrate aspects of their operations with other firms to achieve the economies of scale necessary to compete and explaining that integration should not be penalized with forfeiture of Title VII's small firm exemption through aggregation of the number of employees among the integrated enterprises); *see also Worth,* 276 F.3d at 260 (confirming that the Seventh Circuit rejected the use of an integrated enterprise test to determine whether multiple corporate entities could be considered proper defendants in employment discrimination cases even if one of them did not directly employ the plaintiff).

Though whether to pierce the corporate veil is usually a fact intensive inquiry, Plaintiff has already collected sufficient facts (through the protracted depositions she took of both GEC and

7

Mackie individuals) for this Court to verify that she cannot meet the requisite high burden. GEC, Mackie and CBBEL each maintain their own records, pay their own taxes, pay their own expenses and do not have any commingled bank accounts. [*Exhibit A at 140:23-141:7*] Illinois courts refuse to pierce the corporate veil under circumstances where the companies are ***significantly more*** integrated. *See Prince,* 978 F. 3d at 530 (Declining to pierce the corporate veil of an affiliated network of corporations that were separate car dealerships for Title VII employee threshold. Although dealerships all received management and administrative services from same entity, same individual was either sole or majority owner of each dealership, and all dealerships advertised on single website, each dealership properly maintained corporate formalities and records, paid its own expenses, had its own bank accounts, and filed/paid its own taxes); see also *Smith v. Fusion Med. Spa. S.C./Synergy Inst.*, 836 F. Supp. 2d 773, 777 (N.D. Ill. 2011) (noting that piercing the corporate veil was inappropriate where it was only argued that the president of one entity was the part-owner of the other entities, that plaintiff's health insurance was provided through an affiliate's policy, part of plaintiff's job responsibilities included cross-selling Synergy services, and the affiliates shared physical space, telephone lines, letterhead, accountants, and some employees). There is no basis for Mackie or CBBEL to be held liable for a former GEC employee's discrimination and retaliation claims.

### b. Plaintiff's Retaliation Claim Cannot Be Salvaged with WBE/DBE Allegations.

Finally, the proposed amendment to add WBE/DBE allegations to the Complaint does not salvage Count VI (Retaliation). The Illinois Whistleblower Act bars retaliation against any person who provides information to law enforcement so long as that person has reasonable cause to believe that the information discloses a violation. *Coffey v. DSW Shoe Warehouse, Inc.*, 145 F. Supp. 3d 771 (N.D. Ill. 2015). Although Plaintiff alleges in the proposed amendment that she

"engaged in protected activities of reporting for what she believed in good faith to be WBE and DBE fraud based on the GEC's application with the City of Chicago and the collective efforts of Defendants in the Illinois Whistleblower Act," the record clearly shows that she was not discharged in retaliation for any such activities.

As an initial matter, the record strongly supports that Plaintiff resigned and was not discharged. Further, as discussed above there was never a degree of integration between GEC and the affiliates that would cause any concern for WBE/DBE certification and therefore it would make little sense to discharge Plaintiff for that reason. And more importantly, the proposed amendment provides no allegations supporting a causal link between the alleged activity and the alleged discharge. Foremost, there is only a conclusory at Paragraph 78 in the proposed amendment that she reported suspected WBE/DBE fraud to the authorities ("Plaintiff engaged in protected activities of reporting for what she believed in good faith to be WBE and MBE fraud …"). This is woefully insufficient.

Instead, Plaintiff alleges that she began fearing that GEC would find a reason to fire her after she submitted a FOIA request for GEC's WBE/DBE certification in August 2018 and following a meeting on WBE/DBE issues in September 2018 where she was questioned about the FOIA request. However, as shown by the uncontroverted testimony of GEC's Principal Gasperec, she was not aware that Plaintiff had sent the FOIA request or that she had accused GEC of committing WBE/DBE fraud to federal and state agencies until the initiation of this litigation. [*Relevant pages of Lisa Gasperec's deposition testimony attached hereto as* **Exhibit D** *at 228:18-21 and 229:10-15*] Likewise, none of the other GEC employees deposed testified that they were aware that Plaintiff had sent the FOIA request or had made any accusations regarding WBE/DBE.

Furthermore, Plaintiff alleges that she was discharged in early November 2019 (which GEC strongly disputes), which would have been more than a year after she submitted any such FOIA request or allegedly reported WBE/MBE fraud to authorities in August/September 2018, clearly severing any causal link between the alleged protected activities and the alleged discharge necessary to assert a viable claim. *Clark Cnty. Sch. Dist. v. Breeden*, 121 S. Ct. 1508, 1511 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close'"); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient); *Arres v. IMI Cornelius Remcor, Inc.*, 2002 WL 1888489, * 5 (N.D. Ill. Aug. 15, 2002) (finding that no *prima facie* case of retaliatory discharge was set forth where the temporal proximity between the refusal to undertake an act that was believed to be prohibited and the discharge was "a few weeks"). Consequently, the Motion should also be denied on the basis that its amendment to include WBE/DBE allegations are not viable in and of themselves and therefore do not salvage the retaliation claim.

**C.     PLAINTIFF'S FAILURE TO EXHAUST HER ADMINISTRATIVE REMEDIES.**

Even if Plaintiff could succeed on any integrated enterprise theory, the seven proposed defendants would still have to be dismissed for her failure to exhaust her administrative remedies against them. The settlement correspondence sent on behalf of Plaintiff during her employment was only directed to her employer – GEC. [*Exhibit A at 139:8-14*] Plaintiff's EEOC charge similarly only named GEC as Respondent and did not mention any of the seven proposed defendants. [*Plaintiff's EEOC Charge attached hereto as* **Exhibit D**] As a general rule a party not named in the EEOC charge cannot be sued under Title VII. *Schnellbaecher v. Baskin Clothing*

*Co.*, 887 F.2d 124, 126 (7th Cir. 1989). The only exception to that rule is where the unnamed party has been provided adequate notice of the charge and given the opportunity to participate in conciliation proceedings. *Alam v. Miller Brewing Co.*, 709 F. 3d 662, 666 (7th Cir. 2013). The seven proposed defendants were given no such notice or opportunity and thus, cannot be sued by Plaintiff under Title VII. [*Exhibit A at 139:18-24*]

### D. OTHER FACTORS WEIGHING AGAINST PLAINTIFF'S AMENDMENT.

This Court should also deny Plaintiff's Motion in consideration of her undue delay, the extreme prejudice that would result to GEC and the excessive burden granting her leave to amend would place on the judicial system. Plaintiff's request comes approximately two and a half months past her Court-ordered deadline to add parties or amend pleadings as well as after the close of fact discovery. Plaintiff has no credible justification for her failure to abide by this Court's deadlines. It is disingenuous for Plaintiff to suggest that her timing is because she "did not know the names of the companies and the owners." [*Plaintiff's Motion at p. 20*] This is not a case where Plaintiff simply did not know the corporate name of her employer. Plaintiff is pivoting theories because of GEC's Title VII "employer" defense. Generally, undue delay occurs when a motion to amend would transform or prolong the litigation unnecessarily. *Eckstein v. Balcor Film Investors*, 58 F. 3d 1162, 1170 (7th Cir. 1995); see also *Perrian*, 958 F. 2d at 195 (finding that undue delay resulted in unfair prejudice when the plaintiff moved to file an amended complaint to add additional defendants one year after the original complaint and at the very end of the discovery deadline).

Plaintiff, as the party moving to amend, carries the burden to showing that no unfair prejudice will result to GEC, as the non-moving party. *King v. Cooke*, 26 F. 3d 720, 724 (7th Cir. 1994). It is incontrovertible that GEC would suffer severe prejudice. The amount of unfair prejudice to the nonmoving party is a "significant factor" in determining whether to grant leave to

11

amend. *Dubicz v. Commonwealth Edison Co.*, 377 F. 3d 787, 793 (7th Cir. 2004). Undue prejudice has been found to exist when an amended complaint would require discovery to be reopened and force the non-moving party to "duplicate its efforts" as well as when it would deprive the non-moving party of a summary judgment victory. *See Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993); *see also Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982).

GEC had already incurred substantial costs because Plaintiff is *pro se* and has conducted an inordinate amount of discovery. If Plaintiff's Motion is granted, GEC would have to brief a motion to dismiss the individual defendants, review the complete briefing of the other proposed defendants' briefing on a motion to dismiss, engage in discovery with any new defendants and reopen discovery on Plaintiff's new theory that she was terminated in violation of the Illinois Whistleblower Act. Based on GEC's past efforts to resolve this matter, it is unlikely to resolve even in the event that additional defendants are added. GEC is prepared to move for summary judgment with evidence that Plaintiff voluntarily resigned and was not terminated. Plaintiff's amendment would delay GEC's attempt at summary judgment for at least a year. GEC should not have to amass more legal fees for Plaintiff's futile theories.

Similarly, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts. *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990). Delay impairs the "public interest in the prompt resolution of legal disputes." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988). It is especially inevitable that amendment would burden this Court as it must continue to entertain Plaintiff's lengthy pleadings that have no legal basis. *See* Doc. # 33 (Plaintiff's Motion for Leave to File Motion to Compel Disclosure from Defendant, Motion to Disqualify Opposing Counsel, and

Motion for Protective Order)(which Plaintiff filed because the undersigned could not immediately ascertain whether it would be representing a former GEC employee at his deposition);*see also* Doc. #28 (Plaintiff's 23-page Response to and Motion to Strike Defendant's Amended Answer and Affirmative Defenses) (which Plaintiff filed because she did not agree with GEC's additional affirmative defense).

### IV. CONCLUSION

Plaintiff cannot succeed on an "integrated enterprise" theory and she failed to exhaust her administrative remedies as to the seven proposed defendants. Plaintiff's undue delay, her harassing motives, the prejudice that would result to GEC, and the burden her amendment would place on the judicial system warrant the denial of Plaintiff's Motion.

WHEREFORE, for the aforementioned reasons, Defendant, GASPEREC ELBERTS CONSULTING, LLC, respectfully requests that this Court deny Plaintiff's Motion for Leave to Amend Complaint and Add Parties.

Respectfully submitted,

**GASPEREC ELBERTS CONSULTING LLC**

By: s/ Victoria E. Vanderschaaf
    One of Its Attorneys

Kearney W. Kilens
Victoria Vanderschaaf
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, IL  60606
312-781-6686 (Kilens)
312-781-6680 (Vanderschaaf)
Kilens@LitchfieldCavo.com
Vanderschaaf@LitchfieldCavo.com
Fax: 312-781-6630

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 16, 2021 I served Defendant's Motion for Leave to File Amended Answer and Affirmative Defenses via email at:

Rachel Hubbard
Hubbard2000@att.net

and, I hereby certify that I have mailed by United States Postal Service the documents to:

Rachel Hubbard
615 West Talcott Road, Unit 1
Park Ridge, Illinois 60068


By:   s/ Victoria Vanderschaaf
      LITCHFIELD CAVO LLP
      303 West Madison Street, Suite 300
      (312) 781-6680
      (312) 781-6630 facsimile
      Vanderschaaf@LitchfieldCavo.com